UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEVON Q. SHEFFIELD,

                Petitioner,

-vs-                                            Case No.  8:10-cv-748-T-33EAJ

SECRETARY, DEPT. OF CORRECTIONS,

                Respondent.
_____/

## ORDER

       This cause is before the Court on Devon Q. Sheffield's 28 U.S.C. § 2254 petition for writ of habeas corpus. Sheffield challenges his convictions for attempted first degree murder and possession of a firearm by a convicted felon, which arise out of the Thirteenth Judicial Circuit, Hillsborough County, Florida, in case nos. 03-CF05665 and 03-CF-08474 respectively.

       A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## PROCEDURAL BACKGROUND

       Sheffield was charged in case no. 03-CF-05665 with attempted first degree murder, and in case no. 03-CF-08474 with possession of a firearm by a convicted felon. He was tried by jury October 13 and 17, 2003, and found guilty as charged in each case.[1] Adjudicated guilty in accordance with the verdicts, he was sentenced on December 30, 2003, to life in prison as a habitual violent felony offender on the attempted first degree murder count.   A twenty-year minimum mandatory prison term was imposed. On the

_____

[1] The charges were consolidated for trial pursuant to defense counsel's motion.

possession of a firearm by a convicted felon charge, he was sentenced to thirty years incarceration as a habitual felony offender. A three-year mandatory prison term was also imposed.  At the time of these offenses, Sheffield was on probation in case numbers 01-CF-8207 and 01-CF-11195. His probation was revoked and he was sentenced to five years incarceration. All sentences run concurrently.

### Direct Appeal - Case No. 03-CF-05665

Sheffield did not timely appeal the judgments. However, on October 27, 2004, he was granted leave to pursue a belated appeal of the judgment in case no. 03-CF-05665, as well as the judgments in his probation revocation cases. *Sheffield v. State*, 887 So. 2d 345 (Fla. 2d DCA 2004)[table]. Following briefing, the state district court of appeal per curiam affirmed the judgment in case no. 03-CF-5665*. Sheffield v. State*, 927 So. 2d 1076 (Fla. 2d DCA 2006). In the same opinion, the state district court of appeal reversed the probation revocation order in case no. 01-CF-11195.  *Sheffield*, 927 So. 2d at 1076-77. Sheffield did not seek rehearing nor did he pursue certiorari review in the United States Supreme Court.

### Direct Appeal - Case No. 03-CF-08474

Sheffield subsequently sought and was granted a belated appeal of his judgment in case no. 03-CF-08474. *Sheffield v. State*, 954 So. 2d 1168 (Fla. 2d DCA 2007)[table]. The state district court of appeal affirmed the conviction and sentence on March 19, 2008. *Sheffield v. State*, 978 So. 2d 172 (Fla. 2D DCA 2008)[table].[2]

### State Postconviction Motion - Case No. 03-CF-05665

---

[2]  As of the date of this order, Sheffield has not sought rule 3.850 postconviction relief with regard to case no. 03-CF-8474.

2

Sheffield filed a pro se rule 3.850 motion dated March 14, 2007.  (Resp. Ex. 7). A number of claims were summarily denied. After conducting an evidentiary hearing, the state trial court denied the remaining claims. (Resp. Ex. 8). Sheffield appealed, and on February 19, 2010, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Sheffield v. State*, 29 So. 3d 303 (Fla. 2d DCA 2010)[table]. The mandate issued March 17, 2010.

## THE PRESENT PETITION

On March 29, 2010, Sheffield filed the present undated pro se 28 U.S.C. § 2254 petition for writ of habeas corpus. (Doc. 1). He filed an affidavit of indigency dated March 23, 2010. (Doc. 2). Thereafter, Sheffield filed a pro se 28 U.S.C. § 2254 petition attacking the same judgments in case no. 8:10-cv-837-T-30EAJ.  Case no. 8:10-cv-837-T-30EAJ was dismissed on April 28, 2010, as redundant.

## STANDARDS OF REVIEW -- GOVERNING PRINCIPLES

### Federal Question

Title 28 U.S.C. § 2254 explicitly requires a federal court to entertain an application for writ of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78 (1983)(citing *Engle v. Isaac,* 457 U.S. 1141 (1982)); *Smith v. Phillips*, 455 U.S. 209 (1982). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in

3

terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

**Exhaustion and Procedural Default**

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b),(c). To properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Pursuant to the procedural default doctrine, a state prisoner seeking federal habeas corpus relief who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986).[3]

---

[3] The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Id.,* 477 U.S. at 488. To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the  proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of

**The AEDPA's Anchors**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685 (2002). Under § 104 of the AEDPA, § 2254(d) now forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court, unless the petition can establish that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). Where the state court does explain its reasoning, that decision receives AEDPA deference even if the state court fails to cite -- or is not even aware of -- relevant Supreme Court precedent. *Childers v. Floyd*, 2011 WL 2162083 (11th Cir. June 2, 2011)(citing *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).

Review under § 2254(d)(1) is limited to the record that was before the state court

───────────────────

someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo,* 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Schlup,* 513 U.S. at 324.

that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011).

In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). The federal court will presume the correctness of state court findings of fact unless the petitioner is able to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Congress, in passing the AEDPA also erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing. *Crawford v. Head*, 311 F.3d 1288, 1328-1329 (11th Cir. 2002). Under 28 § 2254(e)(2), if a habeas applicant "has failed to develop the factual basis of a claim in state court proceedings, the [federal] court shall not hold an evidentiary hearing on the claim" unless he shows --

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*

None of Sheffield's grounds rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2254(e)(2)(A)(i). He does not rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A)(ii). Moreover, his allegations, even if adduced, would not entitle him to relief, and he cannot develop a factual basis that he did not diligently investigate and pursue in state court. Accordingly, he is not entitled to an evidentiary hearing on the nine grounds in his federal petition.

## FACTUAL BACKGROUND

The evidence in this case, in the light most favorable to the State, showed that bouncers ejected Sheffield and another man from the "Hollywood Nights" nightclub. Bobby Brassfield, the doorman at the nightclub and victim in this case, opened the lobby door to see a man fitting Sheffield's description being escorted out. The man was pointing at everyone and saying, "I'm going to kill you M.F. I am going to kill you. I'll be back and I'm going to kill you."

Sheffield admitted that he returned to the club that night, but testified that he had a harmless starter pistol and was armed only with a "wild and crazy" intention to scare and embarrass the people at the club who had embarrassed him. However, the testimony, including Sheffield's own, established that he was the only person on the sidewalk when he started firing his "starter pistol." Everyone else was "up by the club entrance," with Brassfield out front and the other employees behind Brassfield. Brassfield testified that Sheffield had a revolver. A club employee, Rolando Wingfield, was shot in the face. Sheffield fled the scene. Although Brassfield attempted to retrieve the gun Sheffield had

7

dropped, Sheffield grabbed the gun as he was fleeing.  Brassfield had returned fire at the gunman later identified as Sheffield based on the fact that the bullet recovered from Sheffield came from Brassfield's gun.

The only evidence that the object Sheffield pointed at Brassfield was a "starter pistol" came from Sheffield's account.  The evidence that Sheffield used a real, operational revolver included testimony from Brassfield that it was a revolver and was firing projectiles, and testimony from Detective Moore that a club employee, who was standing behind Brassfield during the episode, was shot in the jaw.

## DISCUSSION

## GROUNDS ONE AND TWO

In ground one, Sheffield contends the evidence was insufficient to support his conviction for attempted first degree murder. Sheffield asserts that this Court has the authority to review a motion for judgment of acquittal pursuant to a de novo standard of review.  He alleges that the Brassfield did not testify that Sheffield pointed the gun at him or tried to kill him. He further asserts that the state did not adduce any evidence showing he intended to cause Brassfield's death or that his actions could have resulted Brassfield's death.

In ground two, Sheffield contends the state's evidence did not rebut a reasonable hypothesis of innocence -- that he merely possessed a starter pistol not capable of expelling a projectile. While admitting that he "may have" fired a gun, Sheffield claims he fired a starter pistol and not a real gun.

Under Florida law, the state trial court should not grant a Fla.R.Crim.P. 3.380 motion

8

for judgment of acquittal unless the evidence is such that no view which the jury might lawfully take of it favorable to the opposite party can be sustained under the law. *See Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974). The standard of review is whether the trial court abused its discretion in denying a motion for judgment of acquittal. *Cox v. State*, 764 So. 2d 711 (Fla. 1st DCA 2000).

When the evidence is wholly circumstantial, the State must present evidence inconsistent with any reasonable hypothesis of innocence. *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002); *see also, Blackwood v. State*, 777 So. 2d 399, 406 (Fla. 2000)(where State seeks to establish premeditation by circumstantial evidence, evidence relied upon must be inconsistent with every other reasonable inference). If the state's evidence creates an inconsistency with the defendant's theory of innocence, the state trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency. *Woods v. State,* 733 So. 2d 980, 985 (Fla. 1999).

Under a federal constitutional due process analysis, a state must prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). On federal habeas corpus review of a state conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). The government's proof need not rule out **every** theory except guilt beyond a reasonable doubt. *Id.* at 326 (emphasis added). *See Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing *Jackson v. Virginia*, 443 U.S. at 316). The State is not required to rule out every hypothesis except that of the guilt

of the defendant. *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001)(citing *Jackson*, 443 U.S. at 326).

Federal habeas review does not lie to address whether or not the state's circumstantial evidence standard applied in Sheffield's case or whether the state's evidence was sufficient to withstand a motion for judgment of acquittal under Florida law. State courts are the final arbiters of state law. Federal habeas courts should not second-guess them on such matters. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997).

Title 28 U.S.C. § 2254 explicitly requires a federal court to entertain an application for writ of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78 (1983)(citing *Engle v. Isaac*, 457 U.S. 1141 (1982)); *Smith v. Phillips*, 455 U.S. 209 (1982). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Furthermore, grounds one and two are unexhausted and now procedurally barred because Sheffield did not fairly present at trial and on direct appeal the constitutional dimension of grounds one and two. With respect to each ground, his arguments in support of a judgment of acquittal and on direct appeal were raised in state law terms, which did not suffice to satisfy the exhaustion requirement. *See Duncan v. Henry*, 513 U.S. 364, 365, (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal

10

claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.").

Even if Sheffield could show valid cause, Sheffield does not allege and meet the prejudice component of *Wainwright v. Sykes*. Nor does he qualify for the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence.

<u>Merits of Grounds One and Two</u>

Alternatively, on the merits of grounds one and two, Sheffield is not entitled to habeas corpus relief.  To satisfy the constitutional requirement of due process in a criminal trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. *In re Winship,* 397 U.S. 358, 364 (1970). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. at 318-19. In a case such as Sheffield's, the AEDPA's deferential standards govern review of the state court's decision on this issue. *See e.g., Owen v.  Sec. Dep't. of Corr.*,  568 F.3d 894, 918 (11th Cir. 2009) ("Owen has not shown that the Florida Supreme Court's analysis was contrary to, or an unreasonable application of, *Jackson*.").

The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Dorsey v. Burnette*, 319 Fed. Appx. 835, 840 (11th Cir. 2009) (unpublished)(quoting *Jackson*, 443 U.S. at 324 n. 16). Although each element of the offense must be established beyond a reasonable doubt, *Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing *Jackson*, 443 U.S. at 316), the State is not required to rule out every hypothesis except that of the guilt of the

11

defendant. *Jackson*, 443 U.S. at 326.

The federal court will not reweigh the evidence. *Jackson*, 443 U.S. at 319. The trier of fact is responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Although the facts as they exist in the record may support opposing inferences, a federal habeas corpus court must presume that the jury resolved such conflicts in favor of the prosecution. *See Heath v. Jones*, 863 F.2d 815, 820 (11th Cir. 1989); *Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1985).

In Sheffield's case, the State adduced evidence showing that bouncers ejected Sheffield and another man from a nightclub.  Brassfield, opened the lobby door and saw a man fitting Sheffield's description being escorted out of the club. This individual pointed at everyone, saying, "I'm going to kill you M. F. I am going to kill you. I'll be back and I'm going to kill you." (Resp. Ex. 2, T 185-88).

The same man who was ejected returned with what Brassfield testified was a revolver. (Resp. Ex. 2, T 194). At the time, "everyone" was milling around the club entrance, with Brassfield in front and the other employees behind the victim. Brassfield saw the gunman "come around the corner shooting." (Resp. Ex. 2, T 203-04). The gunman was shooting "right where the victim and others were standing." (Resp. Ex. 2, T 204). Had they remained at the front of the door, they would have been shot dead. (Resp. Ex. 2, T 192). Detective Moore testified that one of the club employees, Wingfield, suffered what appeared to be a gunshot wound to her jaw area. (Resp. Ex. 2, 190-192, 205, 251).

Brassfield heard five shots before he was able to run behind a column and return fire. Sheffield collapsed but retrieved his gun and fled. (Resp. Ex. 2, T 194-95). Sheffield

12

was subsequently treated for multiple gunshot wounds. A projectile removed from Sheffield was determined to have come from Brassfield's gun. (Resp. Ex. 2, T 213-14, 221- 22, 224, 250).

Not only was Brassfield's testimony sufficient to prove Sheffield was the perpetrator, Sheffield's own testimony also established his identity as the shooter. Sheffield admitted that he and another individual, "Squeak" were ejected from the nightclub, and Sheffield returned to the club later that night. (Resp. Ex. 2, T 277). Sheffield's testimony further established he was the only individual on the sidewalk when he started firing what he claimed to be a starter pistol. (Resp. Ex. 2, T 295). He claimed the weapon, obtained from an acquaintance, " T House" looked like a real gun.  "T House" went back to the club with Sheffield.  According to Sheffield he "was just going to pretend he was shooting at him and watch them scat...." (Resp. Ex. 2, T 280-81).  Sheffield admitted aiming at the crowd and firing two times.  Brassfield returned Sheffield's fire. (Resp. Ex. 2, T 292, 294-95).

<u>Florida's Definition of Firearm</u>

The definition of "firearm" in § 790.001(6), Fla. Stat. (2003) provides, in relevant part:

"Firearm" means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a riot; the inciting or encouraging of a riot; or the commission of a murder, an armed robbery, an aggravated assault, an aggravated battery, a burglary, an aircraft piracy, a kidnapping, or a sexual battery.

In *Bentley v. State*, 501 So.2d 600 (Fla. 1987) the Florida Supreme Court relied on this definition of firearm in section 790.001(6) in holding that the three-year minimum mandatory sentence of section 775.087(2) could be imposed even though the handgun was

13

unloaded. Because the definition of "firearm" does not involve proof that the gun is loaded or operable, a defendant's use of a firearm during a crime can be established even if the gun is not recovered and introduced into evidence. Circumstantial evidence can be sufficient to establish the use of a firearm. *Mitchell v. State*, 698 So. 2d 555, 558 (Fla. 2d DCA 1997)(internal citations omitted).

*Bentley* answers the question of whether the state's evidence satisfied state law with respect to whether the state's proof satisfied the definition of a firearm under state law. Moreover, Sheffield merely promotes his own version of the facts in claiming the gun he fired was not real. Viewing the evidence in the light most favorable to the state, a rational jury could conclude from the manner in which Sheffield displayed, aimed, and fired the gun, resulting in injury to Wingfield, that he had armed himself with a firearm and fired the firearm at the victim. Further, a rational jury could conclude from the manner in which Sheffield approached and fired in the direction of the victim, who was in front of the others outside the club, as well as the number of shots he fired, that Sheffield acted with an intent to kill beyond a reasonable doubt. The state decision resulted in a reasonable application of *Jackson v. Virginia* and a reasonable determination of the facts in light of the evidence.

Grounds one and two do not warrant habeas corpus relief.

**REMAINING GROUNDS: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

<u>General Standards for Ineffective Assistance of Counsel</u>

An alleged error in the original judgment predicated on ineffective-assistance-of-counsel challenges the conviction's validity. *United States v. Denedo,* 566 U.S. 964 (2009) (citing *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1415-1416 (2009)). The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel

are few and far between. *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)(quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Sheffield's is not one of those cases.

The petitioner has the burden of showing (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Without proof of both deficient performance and prejudice to the defense, it cannot be said that the conviction resulted from a breakdown in the adversary process that rendered the result of the proceedings unreliable. *Strickland*, 466 U.S. at 687.

The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. *See Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)). To establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence.

The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler*, 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical

decisions. *See Chandler* at 1317.[4]

The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. *See Strickland*, 466 U.S. at 689. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take."[5] Chandler at 1316.

Second, the petitioner must show that deficient performance prejudiced the defense. *Strickland*, at 693-96. Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is not sufficient to undermine confidence in the outcome. *Id. Strickland* counsels that if a defendant fails to make a proper showing under one of the prongs, the Court need not consider the other prong. 466 U.S. at 697.

### Doubly Deferential Review

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Knowles*, 129 S. Ct. at 1420 (citing

---

[4] The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. *Chandler* at 1313. Instead the test is ... whether what they did was within the wide range of reasonable professional assistance. *Id.* at n.12 (citing *Waters*, 46 F.3d at 1518 (en banc) (citations omitted).

[5] To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. *Chandler* at 1316.

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  Because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles*, 129 S.Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). Under the "doubly deferential" judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)), For the following reasons, Sheffield's claims of ineffective assistance of counsel fail.

## GROUND THREE

Sheffield contends his trial counsel rendered ineffective assistance by failing to investigate and prepare the defense. In his supporting facts, he faults his counsel for not interviewing or deposing Detective Moore, state witness Wingfield, Lakita Anderson, Selena Harmon, and Yamica Patterson. Afforded evidentiary development on his allegations, Sheffield failed to establish the facts to support his claim.

Sheffield raised this claim as ground one in his rule 3.850 motion. After an evidentiary hearing, the state trial court denied the claim, stating:

> In ground one, Defendant alleges ineffective assistance of counsel due to counsel's failure to investigate, interview or depose witnesses. Specifically, Defendant alleges counsel failed to investigate, interview or depose Detective Julie Moore, Rolanda Wingfield, Lakita Anderson, Selena Harmon, and Yunnica [sic] Patterson, which prejudiced Defendant as doing so would have allowed counsel to present a defense that would adequately test the State's theory of the case, thereby changing the outcome of the trial. More specifically, Defendant alleges that Detective Moore, the lead investigator, would have provided information about Ms. Wingfield's injury,

17

and that the other listed individuals were all eyewitnesses who would have provided an accurate description of Defendant's starter pistol as well as information about the circumstances surrounding the incident, including Ms. Wingfield's physical location at the time she sustained her injury.

At the June 12, 2008, evidentiary hearing, Defendant's trial counsel Mr. Marvin Everett George testified that the defense's theory at trial was that Defendant had a starter pistol and not an actual firearm, and that he was trying to scare the bouncer at the nightclub, but had no intentions of killing anybody. (See June 12, 2008, transcript, p. 5, attached). He testified that there were no depositions conducted pretrial, and when asked whether there was a theory regarding not conducting depositions, he responded as follows:

> GEORGE: Yes. Initially, it was my intent to take depositions in the case having - - in speaking with Mr. Sheffield, reviewing the reports in the case; basically, the conclusion was that the witnesses accounts of what transpired was generally correct. There may have been a few things that were off. But they were not really big things that were off. The big factor we had in the case was that it was a starter pistol; that was going to be our defense, there was no intent to kill. Just the intent to scare. So basically, that's what the issue surrounded.

(See June 12, 2008, transcript, p. 6, attached). He further testified that he discussed with Defendant the tactical or strategic advantages of conducting depositions or further investigation in the case, and elaborated as follows:

> GEORGE: Well, we come to the conclusion was that we were going to--he agreed that the witnesses were not going to add anything more than what was in the police report, that basically was not going to be anything really big. Again, the big factor was, whether it was a gun or whether it was a starter pistol. Our defense was it was a starter pistol. None of the witnesses were going to be able to say with certainty that it was a gun, because the gun was never recovered - - or the starter pistol was never recovered.

(See June 12, 2008, transcript, pps. 7-8, attached).

Moreover, he testified that he was made aware of Rolanda Wingfield because she was mentioned in the police reports along with some other witnesses who would have been the bouncers and dancers. (See June 12, 2008, transcript, p. 8, attached). He testified that he requested his investigator to make contact with some of the witnesses and try to interview them. (See June 12, 2008, transcript, p. 8, attached). When asked if his

investigator successfully completed any interviews of Ms. Wingfield or other potential witnesses in this case, he responded as follows:

> GEORGE: Specifically, Ms. Wingfield, we could never get in contact with her. There was a portion of time when there was a dual representation between Ms. Wingfield and the Public Defender's office. We, in essence, had to get her case resolved prior to talking to her. Once that was done, we made attempts to make contact with her. We -- by that I mean, made phone calls and went to the address that we have for Ms.Wingfield. I specifically recall the investigator reported that he had spoken to a roommate who had indicated that Ms. Wingfield was going to be uncooperative. She was not going to come in and testify. And the only way she would do so would be to -- if she was arrested.

(See June 12, 2008, transcript, pps. 8-9, attached).

Additionally, he testified that he discussed with Defendant whether conducting depositions of law enforcement personnel or other potential lay witnesses would be advantageous and whether there were tactical or strategic advantages in not conducting depositions. (See June 12, 2008, transcript, p. 9, attached). He further elaborated as follows:

> GEORGE: And the conclusion was that we wouldn't gain much, if anything. I mean, again, the issue was a starter pistol. Okay. Another thing also, I know the police went to the hospital to try and talk to Mr. Sheffield. Mr. Sheffield apparently wanted to talk to them and get his side of the story out. I believe he had one or two family members at the hospital who recommend [sic] that he not discuss the case with them and then he took their advise [sic]. So as far as statements incriminating himself, there were none of those. So the law enforcement, in my opinion, wouldn't add nothing to the case.

(See June 12, 2008, transcript, pps. 9-10, attached). He further testified that some disadvantages of conducting depositions included the prosecutor having equal access to the witness and the witness may say something that is even worse for your client. (See June 12, 2008, transcript, p. 10, attached).

Mr. George testified that one of the witnesses had made reference in the police report that Defendant had admitted that he had taken some illegal drugs, and he filed a motion in limine to exclude drug usage, but the Court denied his motion. (See June 12, 2008, transcript, pps. 10-11, attached). Mr. George testified that they were trying to locate Ms. Wingfield to ask her

questions about what happened, where she was, what she saw, what her travel was, could she describe the person who she saw, and if she saw the shooting, what happened after. (See June 12, 2008, transcript, p. 13, attached). He testified in August of 2003, Ms. Wingfield was served with a subpoena, but did not show up. (See June 12, 2008, transcript, p. 14, attached).

With respect to Lakita Anderson, Selena Harmon, or Yunnica [sic] Patterson, Mr. George testified that he remembered that his investigator did talk with one of them, who he believed was Ms. Wingfield's roommate, and it was one of them that was giving the information about Ms. Wingfield and her not coming forward. (See June 12, 2008, transcript, pps. 15-16, attached). However, he further testified he was not concerned with those individual witnesses because of the defense's theory of the case that he did have a starter pistol, went up there, and fired the starter pistol with intent to scare. (See June 12, 2008, transcript, p. 16, attached).Therefore, he testified that whatever testimony they were going to give was going to be of little or no value. (See June 12, 2008, transcript, p. 16, attached).

On cross-examination, Mr. George testified he and Defendant discussed the speedy trial issue and further elaborated as follows:

> GEORGE: Initially, I had filed a motion to continue the case, and Mr. Sheffield did not want that. The reason I was moving to continue the case, is that I was scheduled to go on annual leave. Although he didn't want it, I still filed it because of my plans that I already had. When we came to the hearing, Judge Perry moved the case up rather than moved it backwards, so that we had an earlier trial date; which was fine with him as it would get him to court within a speedy trial, get him his say in court. At that trial date, the State moved to continue the case for - - well they were claiming they were not ready to proceed to trial. The trial date we got, I believe, would have had to have been outside of speedy trial. Upon the expiration of speedy trial, I filed a notice of expiration. I remember speaking to Mr. Sheffield about that prior to filing the expiration, he was pleased with that. And I specifically recall that we came for the hearing on the notice. I recall the State's argument, which was one I've never heard of before, which was the fact that because I had moved to continue the case ultimately from the original trial date, their position was that a speedy trial was waived. My response was the case was moved up. Then Judge Pomponio agreed with my position that, in fact, that was not waived.

20

(See June 12, 2008, transcript, pps. 19-20, attached).

Moreover, regarding the decision to take or not take depositions, Mr. George testified as follows:

> GEORGE: Ideally, ideally, all my cases, I like to take depositions. In serious cases, I extremely like to take depositions. This case was one where in reveres [sic] it's like, okay, I can take depositions, but what is it going to add? It's not going to add anything. We know what our defense is. What they are going to say is going to be consistent with what our defense is going to be. The only difference is; we're saying it's a starter pistol. I'm trying to find Ms. Wingfield to find out about her injuries, and I know the State was also having difficulties finding her - - which I had told Mr. Sheffield as well - - because Mr. Allen had reflected that he was trying to get her subpoenaed, and if need be, he was going to try and get her arrested, get her in custody, so that he would - - how do you call - - control the witness, what have you. Those efforts went through the wall. Okay. So for the most part, I was fairly confident that she wasn't going to show up at the court date.

(See June 12, 2008, transcript, pps. 2 1-22, attached). He further testified Selena Harmon was interviewed, and when asked to give the Court a basic understanding of what her testimony was at that time, he responded as follows:

> GEORGE: She was outside. Standing outside. Lynn saw me use her cell phone. She recalls security was standing at the door. Uniqua (ph) Orlanda, O-r-l-a-n-d-a, and Selina. Felt security was playing because one of them fell to the ground. She observed a black male walk across the parking lot holding his pants, and shooting security. She saw security shot [sic] back. At which time the black male limped off. Described the black male as wearing a white T-shirt, pair of blue jeans with lots of pockets, black shoes.

(See June 12, 2008, transcript, pps. 22-23, attached). He further testified that Defendant agreed with what the witnesses were saying about what he did, but was asserting that he did not have a firearm, but a starter pistol. (See June 12, 2008, transcript, p. 24, attached). He also testified Defendant never asked him to call Lakita Anderson, Selena Harmon, Yunnica [sic] Patterson, or Rolanda Wingfield to testify on his behalf. (See June 12, 2008, transcript, p. 25, attached).

21

At the same hearing, Ms. Rolanda Faye Wingfield testified although she was available during that period of time to answer questions, she was not contacted by any lawyers or investigators on Defendant's behalf. (See June 12, 2008, transcript, pps. 30-3 1, attached). However, she testified that she did not know whether Defendant had a starter pistol, but saw something that appeared to be a firearm. (See June 12, 2008, transcript, pps. 32 and 37, attached).

At the evidentiary hearing, Defendant testified, and when asked if he recalled having a conversation with his counsel Mr. George regarding interviewing, deposing, and investigating the potential testimony of witnesses disclosed to him, he responded as follows:

> SHEFFIELD: The only discussion we had about depositions and interviews and stuff was where, I did in fact advise Mr. Everett that statements in discovery, is whether my statement was on the same line that he told me. I ain't never advised him to stop interviewing, investigation, depositions when they were much needed. Especially, concerning well, the State's theory was placing Ms. Wingfield behind Mr. Brasco [sic] when, in fact, her statement in discovery placed her behind me. But she clearly stated that she seen me from behind.

(See June 12, 2008, transcript, p. 40, attached). He further testified that if he would have been included in the decision making process, he would have waived speedy trial, if necessary, so that depositions could be conducted. (See June 12, 2008, transcript, p. 41, attached). However, when asked if he believed the other witnesses might have offered information regarding a starter pistol and further corroborated his theory of defense being a starter pistol, he responded, "Well, I don't think they could have hurt me any, because the starter pistol was similar to a revolver type pistol. And that's what everybody stated in their discovery, it was a revolver type pistol so." (See June 12, 2008, transcript, p. 42, attached).

Defendant testified that he would have waived speedy trial so that Detective Julie Moore could have been deposed to determine if there was any additional information in Detective Moore's possession and to determine whether or not she could assist in providing contact information for Ms. Wingfield. (See June 12, 2008, transcript, pps. 43-44, attached). Lastly, he testified that although he disagreed with the witnesses saying that he had a gun or firearm as opposed to a starter pistol, he did not disagree with what the witnesses were saying that he was there and firing what they called a gun. (See June 12, 2008, transcript, p. 45, attached).

With respect to Detective Moore, after reviewing the allegations, the

22

testimony and argument presented at the June 12, 2008, evidentiary hearing, the court file, and the record, the Court finds Defendant has failed to demonstrate prejudice as he had failed to present any competent, admissible evidence to support his claim that deposing Detective Moore would have resulted in additional information about Ms. Wingfield's whereabouts or Ms. Wingfield's injury. With respect to Rolanda Wingfield, by her own admission, she could not testify that Defendant had a starter pistol. Therefore, the Court finds Defendant has failed to demonstrate prejudice as he has failed to present any competent, admissible evidence to support his claim that deposing Ms. Wingfield would have resulted in being able to testify at trial that Defendant had a starter pistol. The Court further finds Ms. Wingfield's testimony regarding her physical location at the time she sustained her injury would not change the outcome of the trial especially in light of the fact that Defendant was not charged or convicted of any crime with respect to Ms. Wingfield.

With respect to Lakita Anderson, Selena Harmon, and Yunnica Patterson, Defendant has failed to demonstrate prejudice as he has failed to present any competent, admissible evidence to support his claim that deposing any of them would have resulted in any of them being able to testify at trial that Defendant had a starter pistol. As such, no relief is warranted upon this claim. . . .

(Resp. Ex. 9 at 2-9).

Sheffield does not overcome the presumption of correctness of the state court's findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor does Sheffield overcome the strong presumption that counsel's decisions regarding the state's evidence in relation to potential defense witnesses were in the exercise of professional judgment. *Strickland*, 466 U.S. at 690. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.' " *Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000).

Counsel need not always investigate before pursuing or not pursuing a line of

defense. *Chandler*, 218 F.3d at 1318. "By its nature, 'strategy' can include a decision not to investigate ... [and] a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994).

In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  In other words, the duty to investigate "does not ... compel defense counsel to investigate comprehensively every lead or possible defense ... or to scour the globe on the off-chance something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

The relevant inquiry is not whether Sheffield's counsel pursued a particular defense or witness. Rather, Sheffield must show that not one reasonably competent attorney could act as did his own counsel. *See Chandler*, 218 F.3d at 1318 ("Counsel's reliance on particular lines of defense to the exclusion of others -- whether or not he investigated those other defenses -- is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."). In his rule 3.850 proceeding, Sheffield did not establish that the course taken by his counsel was objectively unreasonable.

As trial counsel's testimony revealed, Sheffield was consulted about the potential witnesses, and agreed that their statements contained in the police reports were accurate. Moreover, Sheffield did not demonstrate his trial counsel was obliged to pursue their testimony in order to be reasonably effective. *See Chandler*, 218 F.3d at 1319 ("Considering the realities of the courtroom, more is not always better. Stacking defenses

24

can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."). The mere fact that there was "nothing to lose" by pursuing a defense does not, by itself, mean that counsel's performance was deficient. As the Supreme Court has recently observed, it has never found counsel to be deficient simply because he "abandon[ed] [a defense] [when] there was nothing to lose by pursuing it." *Knowles*, 129 S.Ct. at 1419 & n. 3.

At the evidentiary hearing, Sheffield did not call the proposed witnesses other than Wingfield. With respect to each (witness), Sheffield failed to demonstrate that not one reasonably competent attorney could conclude that their depositions would have added little if anything. One could reason the proposed witnesses were not vital to the chosen defense that he had used a starter pistol. Moreover, one such attorney could conclude that Wingfield, who was injured by bullet fragments, might potentially support a finding that the pistol Sheffield used was capable of expelling a projectile.

Furthermore, Sheffield did not establish that the witnesses he relies on would have credibly undercut the state's case against him. He did not establish that Wingfield would have testified at trial that he had fired a starter pistol. Given Sheffield's failure of proof, as well as Wingfield's testimony that she saw what appeared to be a firearm, it is objectively reasonable to conclude there was no reasonable probability of a different outcome at trial had his counsel pursued the witnesses as proposed. Ground three is based on speculation of a favorable outcome based on the proposed testimony, which does not meet his burden of establishing actual prejudice from the claimed omission of counsel. *See Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry burden of a habeas corpus petitioner as to what evidence could have been revealed by further

investigation).

The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence. Sheffield has not met the *Strickland* standard to demonstrate that his trial counsel was ineffective for failing to investigate, interview, or depose witnesses, and ground three does not warrant habeas corpus relief.

Ground three does not warrant habeas corpus relief.

## GROUND FOUR

Sheffield claims his trial counsel rendered ineffective assistance by not moving to exclude evidence that Wingfield sustained a gunshot wound. Sheffield raised this as ground two in his rule 3.850 motion. In denying ground two after an evidentiary hearing, the state trial court stated:

> In ground two, Defendant alleges ineffective assistance of counsel due to counsel's failure to file a motion to exclude all evidence of Rolanda Wingfield's gunshot wound. Specifically, Defendant alleges any reference to Ms. Wingfield's gunshot wound should have been excluded as Defendant was not charged with causing any harm to Ms. Wingfield and it was never established that Ms. Wingfield's injury was, in fact, a gunshot wound. Defendant alleges he was prejudiced by counsel's failure to exclude any references to Ms. Wingfield's injury because those references confused the issues at trial and misled the jury.

> At the evidentiary hearing, Mr. George admitted that he did not file any motion in limine regarding Ms. Wingfield's injuries. (See June 12, 2008, transcript, pps. 11-12, attached). When asked why it was not addressed, he responded that he did not address it because he did not see it to be a valid motion which he could file and thought the motion to be frivolous, as he thought the testimony was going to be relevant with regard to the State's failure of prosecution. (See June 12, 2008, transcript, p. 12, attached). He further testified that he wanted to talk with Ms. Wingfield to find out more information about how she got injured and see where he could go with that. (See June 12, 2008, transcript, p. 16, attached).

At the same hearing, Rolanda Wingfield testified that she had been injured by bullet fragments at the Hollywood Nights nightclub some years back during an engagement between Defendant and the bouncer. (See June 12, 2008, transcript, pps. 28-30, attached). However, [sic] testified she did not know who the shooter was. (See June 12, 2008, transcript, p. 30, attached).

At the hearing, when asked if he ever discussed with Mr. George potential motions to exclude Ms. Wingfield's testimony or evidence regarding the gunshot wound or fragment in her neck, he responded in the negative and further explained that he was never made aware of the State's theory of Ms. Wingfield being shot while standing behind Mr. Brasco [sic]. (See June 12, 2008, transcript, pps. 42-43, attached).

After reviewing the allegations, the testimony and argument presented at the June 12, 2008, evidentiary hearing, the court file, and the record, the Court finds Defendant has failed to demonstrate prejudice as he has failed to present any competent, admissible evidence to support his claim that he was prejudiced by counsel's failure to exclude any references to Ms. Wingfield's injury and failed to present any competent, admissible evidence to support his assertion that such references to her injuries confused the issues at trial and misled the jury. As such, no relief is warranted upon this claim. . . . .

(Resp. Ex. 9 at 9-10).

As stated above, in his rule 3.850, Sheffield did not seek exclusion of the evidence of Wingfield's gunshot wound on federal constitutional grounds. Instead, he raised his rule 3.850 claim in terms of state law. The state trial court's order denying the claim, after an evidentiary hearing, plus the per curiam affirmance of the state district court of appeal, answers the question of what would have happened had Sheffield's attorney sought exclusion of the testimony of Wingfield's injuries under Florida law.

Although an ineffective assistance of counsel claim is a federal constitutional claim, which the Court considers under the clearly established *Strickland* rules, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, the Court must defer to the state's construction of its own law." *Will v. Sec'y Dept. of Corr.*, 278 Fed.Appx.

902, 908 (11th Cir. 2008)(citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims"); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them ..." (quotation and citation omitted)).

The state courts did not accept Sheffield's underlying state law claim that Wingfield's testimony should have been excluded. In view of the underlying state law determinations by the Florida courts, Sheffield failed to demonstrate that not one reasonably competent attorney could forego the state law arguments he has proposed.

Furthermore, under § 90.402 Fla. Stat. (2003), all relevant evidence is admissible except as provided by law. Afforded the opportunity, Sheffield, as a threshold matter, failed to establish that the detective's observation of what she believed to be a gunshot wound on Wingfield's face was inadmissible under Florida law.

Sheffield asserts that no medical testimony was adduced related to Wingfield's injuries. He failed, however, to demonstrate that the officer could not testify to her impression of the type of injury inflicted under state law. The detective's observations were probative of the kind of weapon Sheffield fired. Although Sheffield contends that the State did not show that Sheffield had inflicted Wingfield's injury, he points to nothing that would show that the victim's gun caused Wingfield's injury. Under the circumstances, the state court was well within its discretion to conclude the probative value of the evidence outweighed any claimed prejudicial impact.

Independent of the officer's testimony, Brassfield's eyewitness observations of the

28

weapon which Sheffield brandished that night, as well as the manner in which he used that weapon, supported the conclusion that Sheffield had armed himself with a firearm and shot at Brassfield with that firearm. In view of the independent evidence of his guilt of the offense for which Sheffield stands convicted, the claimed evidentiary allowance of Detective Moore's testimony was harmless, having no substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Accordingly, there was no reasonable probability of a different outcome had Sheffield's counsel sought to exclude the detective's testimony as Sheffield has suggested. The state court's decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground four does not warrant habeas corpus relief.

## GROUND FIVE

Sheffield claims his trial counsel rendered ineffective assistance by moving to consolidate his charges of felon in possession of a firearm and attempted murder with a firearm. Sheffield claims the consolidation of his charges allowed the state to introduce his prior convictions at trial. In summarily denying this ground, which Sheffield raised as ground three of his rule 3.850 motion, the state trial court stated:

> In ground three of his Motion, Defendant alleges ineffective assistance of counsel for moving to consolidate Defendant's charges. Specifically, Defendant contends that, just prior to the beginning of trial, counsel moved to consolidate Defendant's charges of Attempted First Degree Murder and Possession of a Firearm by a Convicted Felon. Defendant argues that, although counsel moved to consolidate the charges for the purpose of "keeping the State from having a second chance at him," doing so rendered counsel's performance deficient because it allowed the State to introduce Defendant's prior convictions on the Attempted First Degree Murder charge. Defendant appears to believe that evidence of his prior convictions would have been admissible on the charge of Possession of a Firearm by a

29

Convicted Felon only, and that counsel's motion to consolidate Defendant's charges was the sole reason that same evidence was admissible on the charge of Attempted First Degree Murder. This belief, however, is mistaken, as the consolidation of Defendant's charges had no bearing on the admissibility of the number of Defendant's prior convictions. Under Florida Statutes Section 90.610, "a party may attack the credibility of any witness, including the accused, by evidence of a prior felony conviction. Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions." *Fotopoulos v. State*, 608 So. 2d 784, 791 (Fla. 1992). As such, the Court finds that counsel has failed to demonstrate how counsel was deficient for moving to consolidate Defendant's charges. Therefore, Defendant has not met his burden under *Strickland*, and warrants no relief on ground three of his Motion for Post-Conviction Relief. . . .

(Resp. Ex. 8 at 4).

In Florida, impeachment concerning a defendant's prior convictions generally is limited to inquiry into whether the defendant has committed a felony or other offense involving dishonesty or false statement and the number of such prior convictions. If the defendant admits these matters and does not otherwise open the door to further inquiry, the state would not be at liberty to inquire about the specific nature of the prior convictions. *See e.g., Robertson v. State*, 780 So.2d 94, 100-101 (Fla. 3rd DCA 2000), and cases cited. Sheffield failed to plead facts showing that not one reasonably competent attorney could conclude that the fact he was a convicted felon was proper impeachment under state law. This facet of state law was addressed by the postconviction court and its underlying determinations are entitled to deference.

Sheffield claims that the nature of his prior convictions was elicited. He fails, however, to show that the prosecutor's inquiry exceeded proper impeachment under state law. Moreover, he fails to demonstrate that not one reasonably competent attorney could seek consolidation to avoid exposing Sheffield to a separate trial at which it could adduce

further testimony as to what occurred from others present at the club that night.

Furthermore, Sheffield cannot show prejudice. As the state trial court recognized, Sheffield was subject to impeachment on his prior convictions. To the extent he is suggesting he would not have testified had counsel fully explained the ramifications of his testifying, this claim rests on speculation. Moreover, in view of the properly admitted evidence of his guilt of attempted first degree murder, there was no reasonable probability had his counsel chosen not to consolidate the offenses the outcome of the trial would have been different. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground five does not warrant habeas corpus relief.

## GROUND SIX

Sheffield faults his trial counsel for not objecting to direct examination of Brassfield by the prosecutor. In summarily denying this ground, which Sheffield raised as ground four in his rule 3.850 motion, the state trial court stated:

> In ground four of his Motion, Defendant alleges ineffective assistance of counsel for failure to adequately object to the State's comments on matters not in evidence. Specifically, Defendant contends that, during its direct examination of Bobby Brassfield, the State asked a leading compound question to which counsel failed to object. The question to which Defendant refers is as follows:
>
> > Also so the jury is clear, yourself, the bouncers, the girls, they're all back there behind you, right? This guy is out there by himself?
>
> Transcript, October 17, 2003, p. 192, attached.
>
> Defendant contends that counsel's failure to object to this compound question prejudiced him because Brassfield answered only the latter portion of the question, and never testified as to where the other bouncers and girls were located at the time of the shooting. Defendant contends further that

counsel's failure to object to the form of the question allowed the State to make improper comments about the location of the other bouncers and dancers throughout the remainder of the trial, and permitted the jury to infer that defendant was responsible for causing Rolanda Wingfield's injury. After reviewing the record, the Court notes that, on direct examination, Brassfield answered only the latter portion of the State's question, as Defendant alleges. (See Transcript, October 17, 2003, p. 192, attached). However, on cross-examination, Brassfield testified that no one was standing between him and the shooter. (See  Transcript, October 17, 2003, pp. 205-206, attached). As Brassfield's testimony provided a clear answer to both portions of the State's inquiry, thereby permitting future comment by the State on those answers, the Court finds that Defendant has failed to demonstrate how he suffered any prejudice as a result of counsel's failure to object to the State's form of the question. As such, Defendant warrants no relief on ground four of his Motion for Post-Conviction Relief. . . .

(Resp. Ex. 8 at 5).

Sheffield does not overcome the state court's factual findings with regard to the witness's responses by clear and convincing evidence. 28 U.S.C. 2254(e)(2). Moreover, the state courts did not find that Sheffield's counsel had overlooked a meritorious state-law basis for objecting to the prosecutor's questioning. Moreover, Sheffield fails to demonstrate that not one reasonably competent attorney could conclude that the prosecutor's inquiry of the victim did not constitute a comment on a matter not in evidence. One such attorney could reason that the inquiry merely directed the victim to matters on which the victim could, and did, recount.

The claim also fails scrutiny under *Strickland*'s prejudice prong. In view of the state court's underlying factual and state law findings, it is objectively reasonable to conclude that had counsel objected as proposed, there was no reasonable probability of a different outcome. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground six does not warrant habeas corpus relief.

32

**GROUND SEVEN**

Sheffield contends his trial counsel rendered ineffective assistance by not properly

arguing his motion for judgment of acquittal.  Sheffield raised this claim as ground five of

his rule 3.850 motion. The state trial court summarily denied the claim, stating:

> In ground five of his Motion, Defendant alleges ineffective assistance
> of counsel for failure to argue a motion for judgment of acquittal.
> Specifically, Defendant contends that, in his motion for judgment of acquittal,
> counsel should have argued that the State failed to present evidence that
> negated the defense that the starter pistol was incapable of firing and thus
> could not be considered a firearm, and that Defendant's testimony would
> provide direct evidence that conflicted the State's version of events. A review
> of the record reflects that counsel moved for a judgment of acquittal based
> on the argument that, even in a light most favorable to the State, the
> evidence presented did not establish a prima facie case of guilt on either
> Attempted First Degree Murder or Possession of a Firearm by a Convicted
> Felon. Counsel argued specifically that the State's evidence failed to identify
> Defendant as the perpetrator or demonstrate the existence of a firearm, and
> argued that Defendant's testimony would contradict that of the State's
> witnesses and demonstrate that there was no firearm. (See Transcript,
> October 17, 2003, pp. 253-257, 311-3 17, attached). The Court finds that
> counsel raised appropriate arguments for a motion for judgment of acquittal,
> and finds that Defendant has failed to demonstrate how counsel was
> deficient. As such, Defendant warrants no relief on ground five of his Motion
> for Post-Conviction Relief. . . . .

(Resp. Ex. 8 at 6).

The thrust of Sheffield's claim is that his counsel should have argued for an acquittal

based on the state's circumstantial evidence standard.  Sheffield cannot demonstrate that

his counsel overlooked a meritorious argument in support of an acquittal under state law.

Moreover, he fails to show that not one reasonably competent attorney could conclude the

state's evidence was sufficient to withstand due process scrutiny.  Sheffield has not shown

that trial counsel's performance was ineffective.

 In addition, Sheffield cannot show that he was prejudiced by counsel's action. The

state courts' decisions settle the issue of whether the evidence satisfied Florida law. Furthermore, the evidence viewed in the light most favorable to the state was sufficient for a rational jury to find Sheffield shot at Brassfield, among others, with an intent to kill. Thus, whether his underlying issue is analyzed in state or due process terms, there was no reasonable probability of a different outcome had his counsel argued further as Sheffield now proposes. The state courts' decisions resulted in a reasonable application of *Strickland* under either prong and  a reasonable determination of the facts in light of the evidence.

Ground seven does not warrant habeas corpus relief.

## GROUND EIGHT

Sheffield contends his counsel rendered ineffective assistance by not preserving for review his underlying issues raised in grounds six and seven of the instant petition. The state trial court summarily denied this claim, stating:

> In ground six of his Motion, defendant alleges ineffective assistance of  counsel for failure to preserve matters for appeal. Specifically, Defendant contends that counsel failed to object to the State's comments on matters not in evidence (as alleged in ground four) and failed to object to the trial court's denial of Defendant's motion for judgment of acquittal (as alleged in ground five), which resulted in a failure to preserve these matters for appeal.[1] The Court notes that, the failure to preserve issues for appellate review may constitute ineffective assistance of counsel. However, a defendant must demonstrate "that counsel had no excuse for overlooking the objections and that the case would likely have been different had the objections been made." *State v. Bouchard*, 922 So. 2d 424, 430-431 (Fla. 2d DCA 2006) (citing *Rhue v. State*, 603 So. 2d 613, 615 (Fla. 2d DCA 1992)). Here, Defendant has failed to demonstrate that counsel's alleged deficiency  affected the outcome of Defendant's trial. As Defendant has not demonstrated prejudice, he warrants no relief on ground six of his Motion for Post-Conviction Relief. . .

(Resp. Ex. 8 at 6, 7) (footnote omitted).

Sheffield's ground has no merit because he has not shown prejudice. The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is

34

**being challenged**." *Strickland*, 466 U.S. at 696 (emphasis added). In Sheffield's case, the proceeding "whose result is being challenged" is his jury trial, and the prejudice prong of Strickland requires him to show there was a reasonable probability of a different outcome **at trial** had his counsel acted as Sheffield now proposes.  *See Acker v. Sec'y Dept. of Corr.*, 2009 WL 1149438 at *10  (M.D. Fla. April 28, 2009)(citing *Caratelli v. State*, 961 So. 2d 312 (Fla. 2007), *State v. Bouchard*, 922 So. 2d 424 Fla. 2d DCA 2006)(defendant claiming ineffective assistance of trial counsel must demonstrate prejudice at trial, not on appeal).

Not demonstrating there was any reasonable probability the outcome of his trial would have been different had his attorney objected or argued as Sheffield now suggests, Sheffield has failed to carry his burden of showing prejudice. The state courts' decisions resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground eight does not warrant habeas corpus relief.

### GROUND NINE

Sheffield raises a cumulative impact claim built on his claims of alleged ineffective assistance of counsel raised in the preceding grounds. He suggests a cumulative analysis of his individual claims of proposed ineffectiveness can furnish an additional basis upon which to afford him habeas relief.  Sheffield raised this claims as ground seven in his rule 3.850 motion.  The state trial court denied the claim, stating:

> In claim seven, Defendant alleges ineffective assistance due to the cumulative errors alleged in grounds one through six.  Because grounds one through six lack merit, Defendant's cumulative error claim also fails.  *See Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003)("Because the alleged individual

errors are without merit, the contention of cumulative error is similarly without
merit, and [the defendant] is not entitled to relief on this claim.").  Accordingly,
ground seven is denied.

(Resp. Ex. 9 at 10).

Sheffield's claim does not present a cognizable basis for relief. *Paschal v. Sec. Dept.
of Corr.*, 2009 WL 3790308 at *20 (M.D. Fla., Nov. 9, 2009).  *See Moore v. Parker*, 425
F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually
support habeas relief can be cumulated to support habeas relief."); *see also, Lorraine v.
Coyle*, 291 F.3d 416, 447 (6th Cir.)("The Supreme Court has not held that distinct
constitutional claims can be cumulated to grant habeas relief."), *amended on other
grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 123 S.Ct. 1621 (2003).

Sheffield does not show the state court's decision resulted in an unreasonable
application of *Strickland* or an unreasonable determination of the facts in light of the
evidence. None of the claims bundled into one satisfies both prongs of *Strickland*, and
conducting a cumulative impact analysis cannot secure for Sheffield a different result. *E.g.,
Spears v. Mullin*,  343 F.3d 1215, 1251 (10th Cir. 2003)(Because "the sum of various
zeroes remains zero," the claimed prejudicial effect of the trial attorney's cumulative errors
did not warrant habeas relief). It is objectively reasonable to conclude that singularly or
cumulatively, the allegations of proposed deficient conduct summarily denied or upon
evidentiary probe do not meet Strickland's deficiency prong, and would not have, within a
reasonable probability, affected the outcome of his case.

Ground nine does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Sheffield's petition is denied.  The Clerk is directed to enter judgment against

36

Sheffield and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 22, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Devon Q. Sheffield